# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Charles Kenneth Stone,**
**Petitioner Below, Petitioner**

**FILED**

June 15, 2015

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs) No. 14-0715** (Fayette County 13-C-325)

**David Jones, Warden,**
**Salem Correctional Center,**
**Respondent Below, Respondent**

## MEMORANDUM DECISION

Petitioner Charles Kenneth Stone, by counsel J.B. Rees, appeals the Circuit Court of Fayette County's June 27, 2014, order denying his petition for writ of habeas corpus. Respondent David Jones, Warden, by counsel Laura Young, filed a response and a supplemental appendix. On appeal, petitioner alleges that the circuit court erred in denying him habeas relief without appointing counsel or holding an omnibus evidentiary hearing because he was denied effective assistance of counsel and because a law enforcement officer committed perjury during his trial.[1]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Following a mistrial caused by a juror's medical issue during voir dire, petitioner's second jury trial commenced in May of 2011. Ultimately, petitioner was found guilty of conspiracy to commit a felony, entry of a dwelling, and second-degree robbery. Petitioner was also found guilty of the misdemeanor offense of impersonating a law enforcement officer. The circuit court held a sentencing hearing in June of 2011. The circuit court denied petitioner's application for probation and sentenced him to the following terms of incarceration: (1) one to five years for conspiracy to commit a felony; (2) one to ten years for entry of a dwelling; and (3) five to eighteen years for second-degree robbery. The circuit court ordered the sentences for conspiracy to commit a felony and second-degree robbery to run consecutively, with the sentence for entry of a dwelling to be served concurrently. Petitioner was also fined $100 for the

---

[1]In his circuit court petition for writ of habeas corpus, petitioner alleged several additional grounds for relief that the circuit court addressed in the order on appeal. However, petitioner alleges no error in regard to the circuit court's denial of habeas relief in regard to these additional grounds. As such, the Court will address only the circuit court's rulings relating to ineffective assistance of counsel and alleged perjury during petitioner's criminal trial.

1

crime of impersonating a law enforcement officer.

In July of 2011, petitioner filed a notice of intent to appeal to this Court. By memorandum decision issued on November 16, 2012, we affirmed petitioner's conviction. *See State v. Stone*, No. 11-1120 (W.Va. Supreme Court, November 16, 2012) (memorandum decision). Thereafter, in December of 2013, petitioner filed a pro se petition for writ of habeas corpus in the circuit court. The circuit court, which presided over petitioner's criminal trial, summarily dismissed the petition without appointing counsel by order entered on June 27, 2014. It is from this order that petitioner appeals.

This Court reviews appeals of circuit court orders denying habeas corpus relief under the following standard:

> "In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review." Syllabus point 1, *Mathena v. Haines*, 219 W.Va. 417, 633 S.E.2d 771 (2006).

Syl. Pt. 1, *State ex rel. Franklin v. McBride*, 226 W.Va. 375, 701 S.E.2d 97 (2009).

To begin, we find no error in the circuit court denying the petition for writ of habeas corpus without first appointing an attorney to represent petitioner or holding an omnibus evidentiary hearing. We have previously held that a circuit court

> "may deny a petition for a writ of habeas corpus without a hearing and without appointing counsel for the petitioner if the petition, exhibits, affidavits or other documentary evidence filed therewith show to such court's satisfaction that the petitioner is entitled to no relief." Syllabus Point 1, *Perdue v. Coiner*, 156 W.Va. 467, 194 S.E.2d 657 (1973).

Syl. Pt. 3, in part, *Markley v. Coleman*, 215 W.Va. 729, 601 S.E.2d 49 (2004). According to the record, petitioner filed no documentation to support his assertion that a law enforcement officer committed perjury during the criminal trial. Further, the circuit court found that the evidence submitted in support of petitioner's claim of ineffective assistance of counsel established that petitioner was entitled to no relief. For these reasons, the Court finds no error in the circuit court denying the petition for writ of habeas corpus without appointing counsel to represent petitioner or holding an omnibus evidentiary hearing.

Finally, on appeal to this Court, petitioner simply reasserts his claims that a law enforcement officer committed perjury during his trial and that he received ineffective assistance of counsel below. In support, petitioner submits to this Court a letter dated January 6, 2013, from the West Virginia Department of Military Affairs and Public Safety that indicates that Officer Richard Brown of the Smithers Police Department was not certified as a West Virginia law enforcement officer. During trial, Officer Brown testified that he was a certified law enforcement

2

officer, though the question was not specific to any particular state in which that certification was obtained. The letter petitioner has now presented on appeal indicates that Officer Brown did receive his law enforcement certification in the State of North Carolina. However, it does not appear that this letter was ever presented to the circuit court in support of the petition for writ of habeas corpus.

Specifically, in regard to this ground for relief, the circuit court found that petitioner submitted "no evidence or any support whatsoever for this claim and offer[ed] only mere allegations." On appeal to this Court, respondent similarly states that this letter was not a part of the record below. Pursuant to Rule 7(c)(2)(a) of the West Virginia Rules of Appellate Procedure, "an appendix must contain a certification page signed by counsel or unrepresented party certifying that . . . the contents of the appendix are true and accurate copies of items contained in the record of the lower tribunal." As such, it is clear that the letter upon which petitioner relies was improperly included in the record on appeal to this Court and we are not bound to consider the same.

As to his claims of ineffective assistance of counsel, petitioner argues that counsel failed to provide the State with a timely notice of an alibi defense, thereby preventing the defense from being presented to the jury. The Court, however, does not agree. Upon our review and consideration of the circuit court's order, the parties' arguments, and record submitted on appeal, we find no error or abuse of discretion by the circuit court. Our review of the record supports the circuit court's decision to deny petitioner post-conviction habeas corpus relief based on his claims of perjury and ineffective assistance of counsel, which was also argued below. Indeed, the circuit court's order includes well-reasoned findings and conclusions as to this assignment of error raised on appeal. Given our conclusion that the circuit court's order and the record before us reflect no clear error or abuse of discretion, we hereby adopt and incorporate the circuit court's findings and conclusions as they relate to petitioner's claim of ineffective assistance of counsel and alleged perjury, and direct the Clerk to attach a copy of the circuit court's June 27, 2014, "Order" to this memorandum decision.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** June 15, 2015

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II

3

14-0715

# IN THE CIRCUIT COURT OF
# FAYETTE COUNTY, WEST VIRGINIA

CHARLES KENNETH STONE,

Petitioner,

vs.                                          CIVIL ACTION NO. 13-C-325-H

DAVID W. JONES, Warden,
Salem Correctional Center,

Respondent.

## ORDER

On December, 13, 2013, the Inmate Petitioner (hereinafter "Petitioner"), filed, pro

se, a Petition seeking a writ of habeas corpus in regard to his convictions for three (3)

felony crimes and incarceration at Salem Correctional Center.

The Court has conducted a preliminary review of the Petition pursuant to Rule 4

of the Rules Governing Post-Conviction Habeas Corpus Proceedings. After full

consideration and review of the Petition, relevant law, complete contents of the court file

in the Petitioner's underlying criminal case, and the complete contents of the court file

herein, the Court makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

1.     On March 15, 2011, a jury trial commenced as to Indictment No. 11-F-48-H.

Despite thirty (30) potential jurors being summoned by the Court for petit jury

duty on the aforementioned date, only twenty-two (22) jurors appeared for same. Thereafter, two (2) jurors were aside for cause. While counsel for the State asked questions of the prospective jurors, a juror suffered a diabetes-induced episode which necessitated that the Court temporarily suspend the voir dire process. The Court, out of concern for said juror's health, subsequently declared a mistrial. An Order Declaring Mistrial was entered April 22, 2011.

2. During the May 2011 term of Court, on May 13, 2011, following a two (2) day jury trial in aforementioned underlying criminal case, the Petitioner was found guilty by a petit jury of the felony crimes of conspiracy to commit a felony, entry of a dwelling, and robbery in the second degree. The Petitioner was also found guilty of the misdemeanor crime of impersonation of a law enforcement officer. A Conviction Order was entered May 16, 2011.

3. A sentencing hearing was conducted in the aforementioned felony case on June 27, 2011. The Court reviewed a presentence report prepared by a Probation Officer, and the Petitioner, his counsel, and counsel for the State, all having previously reviewed said presentence report, addressed the Court at said hearing. After considering all of the aforementioned, the Court denied the Petitioner's application for probation and sentenced the Defendant to the following:

a) an indeterminate term of not less than one (1) year nor more than five (5) years in the West Virginia State Penitentiary system for the felony crime of conspiracy to commit a felony;

b) an indeterminate term of not less than one (1) year nor more than ten (10) years in the West Virginia State Penitentiary system for the felony crime of entry of a dwelling;

c) an indeterminate term of not less than five (5) years nor more than eighteen (18) years in the West Virginia State Penitentiary system for the felony crime of second degree robbery; and

d) a fine in the amount of one hundred dollars ($100.00) for the misdemeanor crime of impersonation of a law enforcement officer.

4. The Court further ordered that the aforementioned sentences imposed for the felony crimes of conspiracy to commit a felony and second degree robbery be served consecutively, and that the aforementioned sentence imposed for the felony crime of entry of a dwelling be served concurrently with the other two aforementioned sentences. The Court further ordered that the Petitioner be given credit for forty-seven (47) days time previously served. A Sentencing and Commitment Order was entered June 28, 2011.

5. The undersigned Judge presided in all of the aforementioned proceedings and is very familiar with the facts of the aforementioned criminal case.

3

6. The Petitioner, by counsel, filed a Notice of Intent to Appeal in Supreme Court of Appeals of West Virginia on July 27, 2011. Attachment Two (2) to the Notice of Appeal was a document entitled "Assignments of Error," which contained the following assignments of error:

a) The Petitioner was denied his right to a fair jury trial because the statement of the crime victim and the police report prepared by Smithers Police Department was not permitted to be admitted into evidence, despite the aforementioned "contain(ing) matters which were exculpatory to the Defendant (Petitioner);"

b) The conspiracy charge was based solely on the evidence of co-conspirators with no other evidence to support said charge, no identification of the Petitioner by the victim, no testimony from the victim, and "not any evidence of a complaint of a crime;"

c) The Court erred in allowing co-defendant James A. Scott, Jr., to testify as to the state of mind of the crime victim;

d) The Court erred by allowing testimony concerning the use of illegal drugs, presumably by the Petitioner, without fully instructing the jury that evidence of illegal drug abuse was not an element of the crimes with which the Petitioner was charged;

e) The Court erred by failing to enter a "directed verdict" (sic) in favor of the Petitioner concerning the second degree robbery charge, because no

4

evidence existed that the money allegedly stolen was the property of James W. Myers;

f) The Court erred by failing to allow the testimony of witness Nathan Stephenson as to said witness's contact with the Petitioner approximately three (3) hours after the aforementioned crimes were committed;

g) The Court erred by failing to dismiss Count Three of the Indictment, second degree robbery, because there was no testimony that property was taken from the person of James W. Myers, and the terminology "from the presence of," which is included in Count Three, appears in West Virginia Code § 61-2-12(c), pertaining to bank robbery, and not West Virginia Code § 61-2-12(b), which pertains to robbery of a person;

h) The Court erred by refusing to give Petitioner's proposed jury Instruction No. 2, concerning the testimony of Smithers police officer Jeb McCutcheon;

i) The Court erred by denying the Petitioner's Motion in Limine to preclude the State from presenting testimony as to illegal drug use by the Petitioner;

j) The Court erred by failing to admit into evidence statements by co-defendant Erica Carr, notwithstanding that the State had marked said statements as exhibits but chose not to present same at trial;

k) The Court erred by failing to admit into evidence statements by co-defendant James A. Scott, Jr., made at his plea hearing and to

5

investigating officers, notwithstanding that the State had marked said statements as exhibits but chose not to present same at trial;

I) The State failed to timely and completely disclose the employment history of City of Smithers police officer D.R. Brown; and

j) The State failed to properly provide discovery as to the criminal history, if any, of the crime victim;

7. In the Petition for Appeal in the underlying criminal case, attached to said Petition as Exhibit No. 07, the Petitioner, by his trial counsel, specifically raised four (4) assignments of error, as follows:

a) the Court's ruling that the statement of the deceased victim could not be introduced into evidence, said statement being exculpatory as to the Petitioner, thus violating the Petitioner's right to confrontation;

b) the Court denying the Petitioner's motion for "directed verdict (sic)," because "there was not any evidence of a crime upon which to allow the un-collaborated (sic) testimony of the Co-Conspirator;"

c) the Court denying the admission of the police report into evidence;

d) the Court's denial of the Petitioner's motion for a "directed verdict (sic)" when there "was no credible evidence regarding a necessary element of the charge, namely...that James W. Myers (the decedent victim) was the 'owner or person lawfully in control and custody' of the property alleged to have been stolen."

6

8. The Supreme Court specifically addressed the four (4) aforementioned assignments of error addressed in the Petition for Appeal in Memorandum Decision No. 11-1120, announced on November 16, 2012. The Supreme Court unanimously affirmed this Court's conducting of the Petitioner's jury trial in said Memorandum Decision.

9. Wayne King, a Clay County lawyer with many years of criminal trial experience, served as both trial and appellate counsel for the Petitioner.

10. In "Ground One (1)" of the Petition, the Petitioner seems to argue that he was not given a preliminary hearing as to criminal charges. The Court notes that the Petitioner was indicted by direct presentment to a Fayette County Grand Jury. He further claims that City of Smithers Police Officer Jeb McCutcheon investigated the aforementioned crimes, that the Fayette County Sheriff's Department had no participation in said investigation, and that the West Virginia State Police's only involvement in said investigation was the arrest of the Petitioner on December 13, 2010, in Fayette County Magistrate Court.

11. The Petitioner claims, in "Ground Two (2)," that the elements of the crimes for which he was convicted differ from the elements presented to the Grand Jury.

12 In "Ground Three (3)," the Petitioner claims that Patrolman Richard M. Brown was not a certified police officer and lacked the necessary training to conduct a criminal investigation. He further argues that Patrolman Brown committed perjury by testifying as if he were a certified police officer.

7

13. In "Ground Four (4)," the Petitioner argues that there was insufficient evidence that he was at the scene of the aforementioned crimes or that he had any involvement with the commission of said crimes.

14. In "Ground Five (5)," the Petitioner argues that his trial counsel was ineffective, because he failed to make objections, motions, and to act in the Petitioner's best interest. The Petitioner claims that his trial counsel's "performance fell far below the minimum standards of conduct for lawyers." The Petitioner specifically alleges the following deficiencies in the performance of his trial counsel:

a) Failure to object to the Prosecuting Attorney's opening statement;

b) Failure to object to "errors made by the Court;"

c) Failure to cite case law in support of a motion;

d) Failure to adequately investigate the facts of the case and the failure to hire an investigator;

e) Failure to provide notice of alibi defense to the State:

f) Failure to "object to Brady violations" concerning Patrolman Brown's credentials;

g) Failure to impeach the testimony of co-defendants James Scott and Erika Carr;

h) Failure to object to the use of Erika Carr's statements and testimony;

i) Failure to file a timely appeal;

j) Collusion with the prosecuting attorney; and

k) Cumulative error.

8

15. In "Ground Six (6)," the Petitioner alleges that the deceased crime victim's statement was erroneously not admitted into evidence at trial and that the Court committed unspecified "constitutional error in evidentiary rulings."

16. In "Ground Seven (7)," the Petitioner complains that the testimony of his co-defendants, James Scott and Erika Carr, in the underlying criminal case, was "inconsistent, self-serving, and incredulous."

17. In "Ground Eight (8)," the Petitioner argues again that Patrolman Brown was not a certified police officer, that the State could have easily discovered this fact, and that the State failed to investigate and disclose the alleged lack of qualifications of Patrolman Brown. The Petitioner further argues in "Ground Eight (8)" that the Court erred by not admitting allegedly exculpatory statements, made by the deceased crime victim, into evidence at trial. The Court notes that the Petitioner, by counsel, raised the State's supposed failure to timely disclose Patrolman Brown's employment history, as an Assignment of Error on appeal, as described in Finding of Fact No. 06, hereinbefore, and elected not to pursue this issue in the aforementioned Petition for Appeal, as described in Finding of Fact No. 07, hereinbefore.

18. In "Ground Nine (9)," the Petitioner claims that the State failed to "disclose information about witnesses who were to testify at trial to the defense," specifically that Patrolman Brown lacked the "training or certification he claimed to have in his testimony."

9

19. In "Ground Ten (10)," the Petitioner argues that he received a harsher sentence than his co-defendants, despite the fact that co-defendant James Scott was allegedly the "mastermind" of the crime.

20. On April 22, 2014, the Petitioner filed a pleading captioned "Motion for Appointment of Counsel," wherein he requested that the Court appoint counsel to represent the Petitioner in the case sub judice.

# CONCLUSIONS OF LAW

1. Jurisdiction and venue are appropriately in the Circuit Court of Fayette County, West Virginia.

2. Rule 4(c) of the Rules Governing Post Conviction Habeas Corpus Proceedings is as follows:

> The petition shall be examined promptly by the judge to whom it is assigned. The court shall prepare and enter an order for summary dismissal of the petition if the contentions in fact or law relied upon in the petition have been previously and finally adjudicated or waived. The court's summary dismissal order shall contain specific findings of fact and conclusions of law as to the manner in which each ground raised in the petition has been previously and finally adjudicated and/or waived. If the petition contains a mere recitation of grounds without adequate factual support, the court may enter an order dismissing the petition, without prejudice, with directions that the petition be refiled containing adequate factual support. The court shall cause the petitioner to be notified of any summary dismissal. Rule 4(c).

10

3.  To the extent that any grounds for relief raised in the Petition were or could have been raised on direct appeal to the Supreme Court of Appeals of West Virginia, said grounds for relief are hereby deemed waived. Chapter 53, Article 4A, Section 1(c) reads as follows: "For the purposes of this article, a contention or contentions and the grounds in fact or law relied upon in support thereof shall be deemed to have been waived when the petitioner could have advanced, but intelligently and knowingly failed to advance, such contention or contentions and grounds before trial, at trial, or on direct appeal..." W.Va. Code § 53-4A-1(c).

4.  "A writ of habeas corpus is not a substitution for a writ of error, and ordinary trial error not involving constitutional violations will not be reviewed." Syl. Pt. 4, State ex rel. McMannis v. Mohn, 163 W.Va. 129, 254 S.E.2d 895 (1979), cert denied, 464 U.S. 831 (1983).

5.  The Court concludes that all issues pertaining to the testimony of the co-defendants and the sufficiency of the evidence are moot and thereby waived. The following language from the aforementioned Memorandum Decision of the Supreme Court in this case as to all such issues is *res judicata*:

> After careful examination of the record on appeal, we find – in the light most favorable to the prosecution – that Ms. Carr and Mr. Scott's testimony regarding petitioner's behavior on the night of the crime satisfied each element for a conviction of robbery in the second degree. As a result, the circuit court did not err in denying

11

petitioner's motion for a judgment of acquittal on the charge of robbery in the second degree.

Petitioner's fourth and final assignment of error is that neither Ms. Carr nor Mr. Scott testified that petitioner had committed a crime. As noted above, viewed in the light most favorable to the prosecution, the evidence in the record on appeal was more than sufficient to show that petitioner had committed the crimes of which he was convicted.

6. "Ground One (1)" is without merit. The Petitioner complains that he did not receive a preliminary hearing. Rule 5(c) of the West Virginia Rules of Criminal Procedure reads, in pertinent part, as follows: "the preliminary examination shall not be held if the defendant is indicted...before the date set for the preliminary examination." The Petitioner was indicted on January 11, 2011. A subpoena, dated January 5, 2011, requiring the Petitioner to appear in Fayette County Magistrate Court for a preliminary hearing on February 5, 2011, is part of the court file in the underlying criminal case. Clearly, the Petitioner was not entitled to a preliminary hearing in Magistrate Court because he was indicted by a Grand Jury prior to the preliminary hearing date.

7. Further, the Petitioner's argument concerning the police investigation contained in "Count One (1)" fails to amount to an allegation of a constitutional violation, as required by the Mohn case, quoted above. All allegations concerning the investigation could have been raised on direct appeal, and are thereby waived in

12

this habeas corpus case, pursuant from the above-quoted West Virginia Code § 53-4A-1(c).

8. "Ground Two (2)" of the Petition is also without merit. The Petitioner argues that the "elements of the crime presented at trial differ from the elements presented to the grand jury on indictment." The Petition fails to specifically allege how the elements presented to the grand jury supposedly differ from those presented to the petit jury at trial. He argues that "only the testimony of the codefendants put me at the crime scene." "Ground Two (2)" contains further complaints about the investigation and evidence introduced at trial which clearly do not amount to allegations of a constitutional nature. Also, the above-quoted language from the aforementioned Memorandum Decision clearly shows that the Supreme Court previously ruled that evidence presented by the State at trial was sufficient for the jury to find the Petitioner guilty beyond a reasonable doubt for all the aforementioned crimes.

9. The aforementioned co-defendant witnesses were subject to cross-examination by Petitioner's trial counsel. The jury, hearing the entirety of their testimony and all other evidence presented at trial, found the Petitioner guilty, beyond a reasonable doubt, of the felony crimes of conspiracy to commit a felony, entry of a dwelling, and robbery in the second degree, as well as the misdemeanor crime of impersonation of a law enforcement officer, as charged in the Indictment. It would be wholly inappropriate for the Court, in a habeas corpus proceeding, to

13

disturb the jury's verdicts when sufficient evidence clearly existed to support the Petitioner's conviction for the aforementioned crimes. Further, the Supreme Court's aforementioned Memorandum Decision is *res judicata* as to this issue.

10. In "Ground Three (3)," the Petitioner alleges that Patrolman Brown was not a certified police officer. He submits no evidence or any support whatsoever for this claim and offers only mere allegations. Patrolman Brown testified at trial that he was a certified police officer. Trial, Day One, May 12, 2011, p. 168, ¶ 13-14. Petitioner's counsel made no objection as to the witness's aforementioned testimony. Further, the allegations set forth in "Ground Three (3)" could have and should have been appropriately advanced on direct appeal and they were not so raised. As described hereinbefore, the Notice of Intent to Appeal in the underlying criminal case vaguely referred to issues concerning Patrolman Brown's qualifications as a law enforcement officer, but no assignment of error relevant to said qualifications was advanced in the Petition for Appeal. Thus, said allegations are deemed waived.

11. The Petitioner challenges the sufficiency of the trial evidence in "Ground Four (4)." The Supreme Court has held that following high standard applies:

> A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have

14

drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled. Syl. Pt. 3, State v. Guthrie, 194 W.Va. 657, 461 S.E.2d 163 (1995).

12. Clearly, based upon the testimony of aforementioned co-defendants, police officers, the Petitioner's testimony, and all other trial evidence, and in consideration of the standard set forth in the above-quoted Guthrie opinion, sufficient evidence existed to support the jury's finding of guilt beyond a reasonable doubt as to the aforementioned crimes. Thus, "Ground Four (4)" is meritless. Further, the Supreme Court affirmed this Court's denial of the Petitioner's motion for judgment for acquittal in the aforementioned Memorandum Decision, thus this ground for relief has been waived.

13. "Ground Five (5)" of the Petition alleges that trial counsel's representation of the Petitioner was legally ineffective. The Supreme Court of Appeals of West Virginia has adopted the following two-pronged test for determining ineffective assistance of counsel claims, which the United States Supreme Court established in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): "(1) Counsel's performance was deficient under an objective

15

standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." State v. Miller, 194 W.Va. 3, 459 S.E.2d 114 (1995).

14. The Petitioner's claim that his trial counsel was ineffective because said counsel "failed to object to Prosecutor's opening statement" is baseless. Nothing in the State's opening statement was impermissible in any way which would deny the Petitioner due process, as he argued in "Ground Five (5)." Clearly, since the State's opening statement was not in any way inappropriate, it was not ineffective assistance of counsel for Petitioner's trial counsel to fail to object to same.

15. "Ground Five (5)" further alleges that the Petitioner's trial counsel was ineffective for failing to object to the testimony of Patrolman Brown and "the testimony of witnesses with questionable motives." The Court, following the aforementioned review of the court file in the underlying felony case and all trial transcripts, finds nothing in the record which rises to a violation of the above-quoted Strickland test. Further, the Supreme Court has held that in "reviewing counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions..." Syl. Pt. 6, Miller. The decision of trial counsel to object or not object to specific evidence or testimony is both a legal and strategic trial

16

decision, and nothing in the record discloses that such decisions of the Petitioner's trial counsel were not reasonable. The Court notes that the Petitioner's trial counsel has many years of both civil and criminal trial experience in state and federal courts in West Virginia.

16. The Petitioner points to specific testimony of the co-defendants to which, the Petitioner argues, his trial counsel should have made objections, including purely factual matters. The Petitioner, as a layperson, fails to realize that there was no legal basis for trial counsel to "object" to a witness's testimony simply because the Petitioner himself believed said testimony to be untrue or contrary to his interests. Objections must be for proper legal reasons, said reasons to be clearly set forth.

17. The Petitioner's claim that his trial counsel failed to impeach the testimony of the co-defendants is also without merit. The Court, after presiding in the jury trial and reviewing the transcripts of same, concludes that trial counsel's cross-examination of the two (2) co-defendants in no way violated the aforementioned Strickland test and said cross-examination was objectively reasonable.

18. The Petitioner also argues, in "Ground Five (5)," that his counsel failed to cite case law in support of a motion. The Petitioner fails to cite any specific motion to which this applies, any relevant case law which was not cited by his trial counsel, or how the outcome of the underlying criminal case would have been altered had

17

his trial counsel cited "sufficient case law" in support of this unspecified motion. Clearly, this is a mere allegation without any factual basis.

19. Further, in "Ground Five (5)," the Petitioner argues that his trial counsel failed to conduct a sufficient investigation. The Supreme Court has held as follows:

> The fulcrum for any ineffective assistance of counsel claim is the adequacy of counsel's investigation. Although there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, and judicial scrutiny of counsel's performance must be highly deferential, counsel must at a minimum conduct a reasonable investigation enabling him or her to make informed decisions about how best to represent criminal clients. Thus, the presumption is simply inappropriate if counsel's strategic decisions are made after an inadequate investigation. Syl. Pt. 3, State ex rel. Daniel v. Legursky, 195 W.Va. 314, 465 S.E.2d 416 (1995).

20. The Petitioner, in attacking the investigation conducted by his trial counsel prior to trial, does not point to any specific evidence trial counsel failed to discover or specific facts which would have benefited the Petitioner's case at trial. Thus, this is a mere allegation lacking any factual basis and is without merit.

21. "Ground Five (5)" also contains an allegation that the Petitioner's trial counsel was ineffective because, due to trial counsel's failure to provide the State with a timely notice of alibi defense, no alibi defense instruction was given to the jury.

18

The Supreme Court has written as follows concerning the failure of a trial counsel to give notice of an alibi defense:

> We declined to hold in <u>Glover</u> that the unexplained failure to give a notice of alibi, by itself, would demonstrate ineffective assistance. <u>State v. England</u>, 180 W.Va. 342, 376 S.E.2d 548 (1988). Instead, the determination of whether the failure to file a notice of alibi defense within the requirements of W.Va. R. Crim.P. 12.1 constitutes ineffective assistance of counsel depends on the facts and circumstances of each case. <u>State v. Glover</u>, 183 W.Va. 431, 434, 396 S.E.2d 198, 201 (1990).

22. Trial counsel's failure to provide the State with a timely notice of alibi defense was not ineffective assistance of counsel in the case sub judice. Said lack of notice did cause the Court to prohibit any witness, other than the Petitioner, from testifying as to a possible alibi defense. <u>Trial, Day One</u>, p. 181-188. However, the Petitioner's claim in the Petition is not consistent with his testimony at trial. The Petitioner alleges in the Petition that he "was at the Jackson residence at the time of the crime." Conversely, the Petitioner testified at trial as follows concerning where he was on the date of the aforementioned crimes:

> Mr. King: Now were you at Ms. Erika Carr's residence on (sic) the early morning hours of November 13th, 2010.
>
> Petitioner: I was at their house, yeah.

19

Mr. King:    Okay. Do you remember who else may have been present

at their house?

Petitioner:    Michael Jackson, Crissy Zackus. <u>Trial, Day One</u>, p. 239.

23.    Co-defendant Carr also testified that the home in question was "(co-defendant) James's and my home in Smithers." <u>Id.</u>, p. 94, ¶ 14. Thus, it can easily inferred that the "Jackson home" and co-defendant Carr's home are two different locations.

24.    The Petitioner further testified as follows concerning his whereabouts on the date the aforementioned crimes were committed:

Mr. Parsons: Okay, I just wanted to make that clear. Now you said, for

instance that you weren't with the, Ms. Carr and Ms. Scott,

or Mr. Scott, rather, because you were cutting a tree for Mr.

Dye. Is that correct?

Petitioner:    During the daytime, yes, sir. <u>Id.</u>, p. 242.

25.    Though Petitioner was not permitted to call additional alibi witnesses at trial, the Petitioner nonetheless testified to his purported alibi, as permitted by Rule 12.1(d) of the West Virginia Rules of Criminal Procedure, which provides that said Rule "shall not limit the right of the defendant to testify." The jury apparently found said testimony unconvincing. Further, the Petitioner, despite testifying as

20

to two (2) different locations whereat he was present on the date of the aforementioned crimes, gave no testimony whatsoever that he was at the "Jackson home" on said date, as he now argues in "Ground Five (5)" of the Petition. Clearly, the Petitioner cannot demonstrate that he was prejudiced by his trial counsel's failure to file a notice of alibi defense when the alibi argument in the Petition is not consistent with the Petitioner's own testimony at trial.

26. Also, the Court notes that, regardless of the lack of a notice of alibi, and notwithstanding the aforementioned deficiencies in the Petitioner's argument, trial counsel did not subpoena Michael Jackson, who trial counsel purported was an alibi witness, and Mr. Jackson did not give any testimony whatsoever at trial. Id., p. 231-232, 246-248. Trial counsel believed that Mr. Jackson was present at the courthouse the day of the trial and that Mr. Jackson knew that he was supposed to testify, but the Court's bailiff searched for Mr. Jackson and called his name in the hallway of the courthouse thrice, to no avail. Id. The Petitioner does not allege that trial counsel was ineffective by failing to subpoena Mr. Jackson. Even if a proper notice of alibi had been provided to the State by trial counsel, Mr. Jackson still was not under subpoena and would have not be present to testify. The Petitioner could not have suffered prejudice because the witness would not have testified at trial regardless of the lack of notice of alibi.

27. Further, given the great weight of the trial testimony which supported the Petitioner's convictions for the aforementioned crimes, the Petitioner has failed to

21

demonstrate how, even if he had been permitted to present alibi witnesses, the testimony of said witnesses would have caused the jury to return verdicts of not guilty as to the aforementioned crimes.

28. Clearly, the Petitioner has failed to make a sufficient showing that he was prejudiced by his counsel's failure to provide the State with a notice of alibi defense. Thus, trial counsel's failure to provide the State with a timely notice of alibi defense was not ineffective assistance of counsel because no actual prejudice was suffered by the Petitioner, as required by the second prong of the above-quoted Strickland test.

29. The Petitioner, in "Ground Five (5)," again attacks Patrolman Brown's credentials as a certified law enforcement officer and argues that his counsel should have investigated said officer's certification. However, the Petitioner again fails to point to any evidence or fact to support his claim that Patrolman Brown was not a certified police officer during said officer's investigation of the underlying criminal case. The Petitioner, here and in multiple instances contained within the Petition, makes reference to a "private investigator" who discovered that Patrolman Brown was not a licensed police officer. However, the Petitioner never identifies this "private investigator" by name, and, in his extensive list of twenty-one (21) "supporting documents" attached to the Petition, nothing described therein is the result of any private investigation following the final disposition of the underlying criminal case.

22

30. The Petitioner's claim that his trial counsel failed to file a timely appeal, thus causing him to lose "forever, the right to effectively appeal the decision against me" is a totally frivolous claim. Trial counsel did, in fact, file a Petition for Appeal in the Supreme Court of Appeals of West Virginia, and said Petition for Appeal was denied by the Supreme Court in the aforementioned Memorandum Decision No. 11-1120, as described hereinbefore in Finding of Fact No. 7. The Petitioner is perhaps inartfully arguing that his counsel filed a motion for rehearing in the Supreme Court one (1) day after the time prescribed by the Rules of Appellate Procedure, thereby losing the opportunity to have his case reconsidered by the Supreme Court. Clearly, counsel's failure to file a motion for hearing following the Supreme Court's well-reasoned Memorandum Decision does not in any fashion demonstrate that the Petitioner would have received the relief he sought if such a motion was timely filed, thus his counsel's conduct was not ineffective. The Court notes that the Supreme Court of Appeals of West Virginia rarely grants motions for reconsideration.

31. Similarly, the Petitioner's claim that the acts of his trial counsel "could" constitute collusion with the Prosecuting attorney is also completely frivolous. There is no evidence whatsoever to support this claim. Further, Petitioner's use of the word "could" in the Petition, rather than pointing to any specific fact, clearly demonstrates that this is a mere allegation without factual support.

23

32. The Petitioner further alleges that his trial counsel was ineffective due to "cumulative error." A review of the record discloses that any errors by his trial counsel, even considered cumulatively, were not errors of a constitutional dimension and clearly fail to rise to the level of ineffective assistance of counsel as herein discussed.

33. Cleary, for all the aforementioned reasons, the totality of "Ground Five (5)" is without merit.

34 The Petitioner's contention in "Ground Six (6)" that the Court committed error by not admitting the statements of the deceased crime victim is totally meritless. The Supreme Court addressed this matter in its aforementioned Memorandum Decision, which affirmed this Court's decision to exclude said statements from evidence at trial. Thus, this ground for relief has been waived and the Supreme Court's decision is *res judicata* as to the statements of the deceased crime victim.

35. "Ground Seven (7)" of the Petitioner is completely without merit. The Petitioner merely complains that the statements given by co-defendants James Scott and Erika Carr to law enforcement were "inconsistent in material areas" from their trial testimony, and that said trial testimony was "self-serving." The jury heard and considered the aforementioned testimony, including trial counsel's cross examination of the aforementioned witnesses, the trial testimony of all other witnesses, including the Petitioner, and ultimately found the Petitioner guilty of

24

three (3) felony crimes and one (1) misdemeanor crime. It would be wholly inappropriate for the Court, in the case sub judice, to overturn the jury's verdicts simply because the Petitioner complains that the testimony of the aforementioned co-defendants was "self-serving," "inconsistent," and "incredulous."

36. In "Ground Eight (8)," the Petitioner claims that the State was aware of a deficiency in Patrolman Brown's credentials as a law enforcement officer and failed to disclose to the Petitioner and his counsel information relating to said deficiency. The Petitioner again complains of the Court's failure to admit the statements of the deceased crime victim in "Ground Eight (8)" as well. Since the Court has determined the Petitioner has only offered mere allegations with no factual support as to Patrolman Brown's credentials, all matters concerning said credentials were previously waived, and the Court's prior rulings as to the deceased crime victim's statements were previously affirmed by the Supreme Court , "Ground Eight (8)" is clearly without merit.

37. In "Ground Nine (9)," the Petitioner alleges that "the State failed to disclose information on a testifying witness," specifically that Patrolman Brown was not a certified law enforcement officer. This issue has been dealt with many times already and said issue is no more viable now than it was several pages and paragraphs ago. Thus, this ground for relief totally meritless.

25

38. In "Ground Ten (10)," the Petitioner argues that his co-Defendants "received lesser sentences" than the Petitioner. The Petitioner alleges that this is a "violation of my right to a fair trial" and his right to "due process of law." However, the Petitioner points to no legal deficiency or error in the sentences imposed by the Court for Petitioner's aforementioned convictions. The Supreme Court has held, in a previous decision affirming this Court, "that consideration is given to the nature of the offense, the legislative purpose behind the punishment, a comparison of the punishment with what would be inflicted in other jurisdictions, and a comparison with other offenses within the same jurisdiction. Syl. Pt. 2, State v. Williams, 205 W.Va. 552, 519 S.E.2d 835 (1999). Cleary, the sentences imposed for the Petitioner's crimes in no way violate this standard, and said sentences were, at time of imposition, and remain, wholly legally appropriate.

39. The Petitioner, in consideration of all the facts and circumstances in the underlying criminal case, clearly received that to which he was constitutionally entitled— a fair and public trial by an impartial jury of his peers. Nonprejudicial errors, if any, which may have occurred, even if considered cumulatively, would not entitle the Petitioner to the requested relief. The United States Supreme Court has held from March 1953 forward that a criminal defendant is entitled to a fair jury trial, but not a perfect jury trial. Lutwak v. United States, 344 U.S. 644, 73 S.Ct. 481 (1953). Human nature understandably causes convicted criminal

26

defendants to see a fair and impartial jury trial as one in which they have been fully acquitted.

40. Pursuant to West Virginia Code § 53-4A-7(c) and Rule 9(c) of the Rules Governing Post-Conviction Habeas Corpus Proceedings in West Virginia, the Court concludes that the Petitioner raised grounds for relief pursuant to State law and the Fourth, Fifth, and Sixth Amendments of the United States Constitution, and that said grounds for relief, however, were argued and decided under the applicable West Virginia and federal law.

41. The Supreme Court of Appeals of West Virginia has held as follows regarding the appointment of counsel in habeas corpus proceedings:

> "A court having jurisdiction over habeas corpus proceedings may deny a petition for a writ of habeas corpus without a hearing and without appointing counsel for the petitioner if the petition, exhibits, affidavits or other documentary evidence filed therewith show to such court's satisfaction that the petitioner is entitled to no relief." Syl. Pt. 1, Perdue v. Coiner, 156 W.Va. 467, 194 S.E.2d 657 (1973).

42. Cleary, in consideration of the above-quoted case law, the Petitioner is not entitled to the appointment of counsel in the case sub judice.

Accordingly, it is ORDERED that the Petitioner's "Motion for Appointment of Counsel" be and the same is hereby DENIED.

If is further ORDERED the Petition seeking a Writ of Habeas Corpus be and the same is hereby DENIED.

27

It is further ORDERED that said civil action be and the same is hereby DISMISSED.

The Clerk shall, forthwith, mail an attested copy of this Order to Rory L. Perry, II, Clerk of Court, Supreme Court of Appeals of West Virginia, Capitol Complex Building One, Room E-317, Charleston, West Virginia 25305 and Inmate Charles Kenneth Stone, Salem Correctional Center, 7 Industrial Boulevard, Industrial, West Virginia 26426.

ENTERED this 27th day of June, 2014.

JOHN W. HATCHER, JR.
CHIEF JUDGE

A TRUE COPY of an order entered
June 27, 2014
Teste: Danielle White
Circuit Clerk Fayette County, WV